Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7506 | **DATE** | 7/13/2001 |
| **CASE TITLE** | Gloria Bailey vs. Larry G. Massanari, Acting Commissioner of Social Security | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [10-1] is denied. Defendant's motion for summary judgment [15-1] is granted. This case is dismissed with prejudice. Judgment is entered in favor of the defendant and against the plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 16 2001 | |
| | Notified counsel by telephone. | date docketed | 19 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | FILED FOR DOCKETING 01 JUL 13 PM 4: 47 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLORIA BAILEY, | ) |
| | ) |
| Plaintiff, | ) No. 00 C 7506 |
| | ) |
| v. | ) Judge Ruben Castillo |
| | ) |
| LARRY G. MASSANARI, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**DOCKETED**
**JUL 1 6 2001**

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria Bailey seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423. Bailey claims that the Administrative Law Judge's ("ALJ") decision to deny her benefits should be reversed and set aside because it was not supported by substantial evidence. Because we find that the ALJ reasonably concluded that Bailey could perform a significant number of jobs in the national economy and was, therefore, not disabled within the meaning of the Social Security Act, we affirm the ALJ's decision, deny Bailey's motion for summary judgment, (R. 10-1), and grant the Commissioner's cross-motion for summary judgment, (R. 15-1).

---

[1] On March 29, 2001, Larry G. Massanari became Acting Commissioner of Social Security. Therefore, pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Massanari is automatically substituted as Defendant for Kenneth S. Apfel, whom Bailey originally named as the defendant in this case.



## RELEVANT FACTS

Bailey was thirty-six years old at the time of her administrative hearing, and she has a twelfth grade education. Bailey alleges a disability since October 1, 1994. Before filing her claim, Bailey had worked until 1994 as a secretary, counter clerk and bank teller.

### I. Bailey's Hearing Testimony

Bailey testified at a Social Security Administration ("SSA") hearing held in Urbana, Illinois on November 9, 1998 before ALJ Barbara J. Welsch. At this hearing, Bailey testified that she was unable to work because of constant pain in her lower back, right hip, right leg and right shoulder. Bailey testified that she began experiencing lower back pain in October 1994. (R. 8, Admin. R. at 384, SSA Hr'g Tr.) She stated that she has pain in her right hip and little mobility as well as swelling in her right leg. (*Id.*) She said that she noticed the loss of motion in her leg two weeks after the birth of her daughter. Her right foot is numb most of the time, and she also has pain in her right jaw and constant headaches on the right side of her head. She added that it takes her three to five minutes to move from a sitting to a standing position. She also testified that she needs to alternate between a sitting and standing position every ten to fifteen minutes.

Bailey stated that she does not do any lifting because it aggravates her pain. She also said that she is able to drive a car only ten to fifteen minutes at a time. She testified that she does little housework, and up until six to eight months prior to the hearing, her parents had been helping her take care of her daughter. She stated that she sleeps about five to six hours a night and wakes approximately every two hours due to her pain.

When asked by the ALJ if she has any mental problems or if she is currently seeing a psychologist or counselor, Bailey replied, "No. The only thing they've got me on the anti-

depressant because they said that I'm suffering from depression from all the pain. I'm real irritable and short-tempered." (*Id.* at 385.) Bailey also stated that the medication she is currently taking does not help ease her pain. (*Id.*)

## II. Vocational Expert Nancy Wright's Testimony

Vocational Expert Nancy Wright was asked several questions by the ALJ regarding Bailey's vocational profile and residual functional capacity ("RFC"). First, the ALJ asked Wright if Bailey's past relevant jobs of admitting or registration clerk would allow for a sit/stand option. Wright testified that these jobs would allow an individual to change her position during the day. In response to the ALJ's follow-up questions, Wright testified that the past relevant jobs do not require climbing or work at unprotected heights, right leg or foot controls, prolonged walking or standing and pushing or pulling items over five pounds.

The ALJ then asked Wright a question regarding a hypothetical individual of Bailey's age, education and work experience who was limited to light, sedentary work, no prolonged walking or standing, no climbing or working at unprotected heights, and no leg or foot controls on the right, and would allow the individual to change her position every twenty to thirty minutes between standing and sitting. In answer to this question, Wright testified that such an individual could work as a diet clerk (5,515 jobs in Illinois), rehabilitation clerk (8,760), appointment clerk (8,760), information clerk (21,485) or telemarketer (11,784).

A second question involved a hypothetical individual with no past relevant work experience and no transferable skills working in the area of unskilled, entry-level work at the light and sedentary level. In answer to this question, Wright testified that such an individual could work in light unskilled jobs as an airline security representative (38,577 jobs in Illinois), laundry work (14,000) or arcade attendant (3,624). She also testified that such an individual

3

could work at the sedentary level as an order clerk (5,600), tube operator (1,728), surveillance system monitor (51,070) or charge account clerk (5,520). These jobs require no transferable skills and infrequent overhead reaching.

On cross-examination, Bailey's attorney asked Wright if any of the jobs she identified would allow the hypothetical individual to recline for thirty to sixty minutes as needed. In answer to this question, Wright testified that none of the jobs she identified could be performed with the individual lying down.

### III. Medical Evidence

Bailey saw several physicians and health care professionals at the Carle Clinic in Urbana, Illinois, beginning March 15, 1995, when she first complained of pain in her lower back and right leg. She underwent a magnetic resonance imaging scan ("MRI") in March 1995 under the care of Dr. James Niemeyer, who subsequently diagnosed her with fibromyalgia, neck pain, dysfunction of the cervical spine, possible carpal tunnel syndrome and sleep disturbance. Dr. Niemeyer prescribed physical and relaxation therapy and a regular exercise program for Bailey. Dr. Niemeyer also recommended that Bailey take Zoloft or Prozac to regulate her sleep. In June 1997, Dr. Niemeyer noted that Bailey had called him to report that she was unable to work. Dr. Niemeyer further noted that he "does not do disability evaluations" but would be willing to give Bailey a referral for a disability evaluation. (*Id.* at 205, June 19, 1997 Niemeyer Notes.) In July 1997, Dr. Niemeyer opined that Bailey was disabled due to her pain.

Bailey also saw Dr. Paul Smucker for myofascial pain syndrome, Dr. Mark Zawodniak for pain and sleep disturbance, Dr. Nader Rouhani for chronic back pain, Dr. Terry Noonan for chronic pain syndrome, for which he prescribed conservative treatment, and Dr. Kenneth Aronson for a neurological evaluation. Additionally, Dr. Donald McGrogan administered a

4

Minnesota Multiphasic Personality Inventory 2 ("MMPI-2") test on Bailey and determined that she had a mild to moderate amount of depressive reaction to her pain and also had some symptom intensification. Dr. McGrogan also noted that Bailey was not comfortable around others and experienced feelings of lethargy. He reported that Bailey had received a very comprehensive approach to her problems and recommended self-regulation therapy or biofeedback. However, Dr. McGrogan noted that it was the decision of Dr. Eric Baddour, another physician at the Carle Clinic, regarding this therapy. (*Id.* at 318, Aug. 28, 1997 McGrogan Progress Notes.)

Bailey was also treated by Dr. Judith Lee-Sigler who diagnosed her with fibromyalgia and radiculitis. Dr. Lee-Sigler prescribed physical therapy for Bailey and determined that she was at a sedentary physical level with functional restrictions that included changing positions from sitting to standing for fifteen to twenty minutes at a time, reclining from thirty to sixty minutes at a time as needed, driving only ten to fifteen minutes at a time, and lifting, pulling and pushing less than five pounds. Additionally, Bailey's chiropractor found that she had limited ability to perform work, tolerating only two to three hours of work at a time before her pain increased significantly. Bailey was prescribed various treatments by her doctors, including physical therapy, medications for her pain and sleep disorder, trigger point injections, exercise and relaxation therapy.

## IV. The ALJ's Decision

On April 21, 1999, ALJ Welsch determined that, for the purpose of disability insurance benefits, Bailey was not disabled. In reaching this conclusion, the ALJ performed the five-step analysis required by SSA regulations. 20 C.F.R. §§ 416.920, 404.1520. The ALJ found that Bailey was not engaged in substantial gainful activity at any time since her alleged disability

onset date of October 1, 1994. (R. 8, Admin. R. at 11, ALJ Decision.) Second, the ALJ determined that the claimant has satisfied her burden of establishing the existence of a medically determinable impairment. Furthermore, the ALJ found that Bailey had a "severe" impairment, as specified in the SSA Regulations. However, the ALJ found that Bailey's impairment or combination of impairments did not meet or equal the level of severity listed in 20 C.F.R. § 404. (*Id.* at 21.)

In addition, the ALJ found that Bailey retained the exertional capacity to perform light and sedentary work, as defined in the SSA Regulations. Light work is the ability to lift or carry objects up to ten pounds frequently and twenty pounds occasionally, and sedentary work involves a maximum lifting capacity of ten pounds. (*Id.* at 18.) Based on the vocational expert's testimony, the ALJ determined that "throughout the period at issue herein [Bailey] retained the residual functional capacity to perform her past relevant work as an admitting clerk or teller." (*Id.* at 19.) The ALJ found that Bailey had skills transferable to semi-skilled, sedentary jobs of diet clerk (approximately 5,515 jobs in Illinois), rehabilitation clerk (8,760), appointment clerk (21,485), information clerk (27,908) and telemarketer (11,784).

Finally, the ALJ found that there are "other jobs that exist in significant numbers in the economy of the State of Illinois which the claimant would be capable of performing." (*Id.* at 20.) The ALJ found that those jobs are "even more restrictive than that established by this record and include the additional vocational factors which would require consideration had the evidence established that the claimant's impairment rendered her incapable of performing her past relevant work." (*Id.*) The ALJ found that the evidence failed to establish a restriction of reaching overhead or pushing/pulling over five pounds. (*Id.*) Therefore, the ALJ concluded that Bailey was not disabled.

6

Currently before this Court is Bailey's motion for summary judgment. On appeal, Bailey contends that in deciding to deny her benefits: (1) the ALJ failed to properly weigh the medical opinions and other significant evidence; (2) the ALJ failed to consider Bailey's mental impairment; (3) the ALJ failed to follow the requirements of Social Security Ruling ("SSR") 96-7 in evaluating symptoms; and (4) the ALJ failed to address the vocational expert's testimony on cross-examination. The Commissioner argues that substantial evidence supports the ALJ's finding. For the following reasons, we deny Bailey's motion and affirm the ALJ's decision.

## ANALYSIS

### I. Legal Standards

The standard of review for final decisions of the Social Security Commissioner (here the ALJ) in federal benefits cases is deferential. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1972) (quotation omitted). In other words, the ALJ's findings must be supported by more than a mere scintilla of the evidence, but they may be supported by less than the greater weight of the evidence. *See id.* In reviewing the ALJ's decision, we may neither substitute our own judgment for that of the ALJ nor reweigh the facts or evidence. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

To receive disability benefits, a claimant must be "disabled" as defined by the Social Security Act. An individual is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 416(i). As noted above, Social Security Regulations dictate the use of a five-step process to determine

7

whether a claimant is disabled. *See, e.g., Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). At issue in this case are: (1) whether the ALJ failed to properly weigh the medical opinions and other significant evidence; (2) whether the ALJ failed to consider evidence regarding Bailey's claim of mental impairment; (3) whether the ALJ failed to follow the requirements of SSR 96-7; and (4) whether the ALJ failed to address the vocational expert's testimony on cross-examination.

## II. Whether the ALJ Failed to Properly Weigh the Medical Opinions and Other Evidence

### A. Treating Physicians' Opinions

Bailey argues that the ALJ failed to give controlling weight to the medical opinion of Dr. Lee-Sigler, one of her treating physicians. Specifically, Bailey contends that the ALJ failed to consider that doctor's opinion regarding her ability to recline for thirty to sixty minutes at a time as needed. Bailey also contends that nearly every physical exam revealed significant tender trigger points, tight muscles and decreased range of motion. (R. 12, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 11.) Furthermore, Bailey maintains that the ALJ improperly failed to consider the opinions of Dr. Niemeyer and her other treating and examining health care professionals, including physical therapists. Finally, Bailey argues that the ALJ erred in not considering the opinion of the chiropractor that Bailey's functional capacity restricts her to a two to three hour work day.

The ALJ must examine and weigh all evidence, including observations by treating and examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken and aggravating or precipitating factors, to evaluate how much the claimant's impairment affects his or her ability to work. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). A treating physician's opinion will be given

8

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. *Schramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000). However, an ALJ may reject a treating physician's opinion if it is internally inconsistent or inconsistent with other evidence. *Knight v. Chater*, 55 F.3d 309, 313-14 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)-(d)). Where treating and consulting physicians present conflicting opinions, the ALJ must decide the conflict. *See, e.g., Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). The ALJ cannot ignore an entire line of evidence. *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). If she did, she would fall below the minimum level of articulation required. *Id.* On the other hand, the ALJ is not required to comment specifically on every piece of evidence presented, and the ALJ's decision "must be based on consideration of *all* the relevant evidence and the reasons for his conclusion must be stated in a manner sufficient to permit an informed review." *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1998) (emphasis in original). Moreover, the Social Security Regulations require that the ALJ review all medical findings and other evidence that support a medical source's statement regarding disability, but a statement of "disability" by a medical source does not mean the ALJ is required to find the plaintiff disabled. 20 C.F.R. § 416.927(e)(1). The final responsibility for deciding disability rests with the Commissioner. *Id.* at § 416.927(e)(2).

In this case, the ALJ properly rejected the portion of Dr. Lee-Sigler's opinion that Bailey needed to recline thirty to sixty minutes a day as needed. The ALJ's decision demonstrates that she found the treating physician's opinion internally inconsistent and inconsistent with other evidence in the record. For example, the ALJ cited Dr. Lee-Sigler's October 21, 1998 narrative describing Bailey's "essentially normal" testing and her conservative treatment measures. The

9

ALJ also noted Bailey's positive responses and improvements to conservative treatment measures such as physical therapy, chiropractic manipulations, diuretics, over-the-counter analgesics, low-dose anti-depressants and increased physical exercise. (R. 8, Admin. R. at 15, ALJ Decision.) Furthermore, the ALJ cited both Dr. Smucker's opinion that Bailey had experienced "excellent pain relief" and Bailey's comment to the doctor that her symptoms were milder overall. (*Id.*) Bailey's doctors also noticed that she exhibited "no trigger points" during one visit, and "her condition was 'improving nicely' in response to a series of trigger point injections" along with physical therapy and aerobic conditioning. (*Id.*)

The ALJ's medical finding that Bailey was not as severely restricted by her pain as her testimony or Dr. Niemeyer's opinion suggests was supported by substantial evidence. The ALJ described various doctors' reports and notes, as well as Bailey's own testimony regarding her daily activities, particularly her ability to care for her daughter, as evidence that was inconsistent with Dr. Niemeyer's opinion. (*Id.* at 15-16.) In contrast to Bailey's argument, the record evinces that the ALJ did consider Dr. Niemeyer's opinion. In fact, the ALJ cited the doctor's notes in her decision. (*Id.* at 16.) The fact that the ALJ did not adopt Dr. Niemeyer's opinion regarding Bailey's disability in light of other evidence in the record does not lead to the conclusion that the ALJ failed to consider the doctor's opinion properly. *See Bednar v. Apfel*, 90 F. Supp. 2d 963, 972-73 (N.D. Ill.) (stating that when the court can track the ALJ's reasoning and feels assured that the ALJ considered the important evidence, then the ALJ has satisfied the articulation standard) (citation omitted).

Finally, substantial evidence contradicts the chiropractor's opinion and supports the ALJ's decision that Bailey retained the capacity to perform light and sedentary work. For example, the ALJ found that the weight of the evidence demonstrated that Bailey acknowledged

a positive response from conservative treatment measures. (R. 8, Admin. R. at 15, ALJ Decision.) Moreover, the ALJ noted Dr. Noonan and Dr. Rouhani's similar reports that Bailey had been "getting along very well" and that her "back and lower extremity symptoms had improved significantly in response to physical therapy and a diuretic medication." (*Id.* at 15-16.) Therefore, we conclude that the ALJ did not improperly weigh the opinions of Bailey's treating physicians and examining health care professionals.

### B. No Independent Medical Determination

Next, Bailey contends that the ALJ made an independent medical determination and improperly substituted her opinion for Dr. Lee-Sigler's opinion. Bailey argues that the ALJ did not refer to, or rely upon, any other medical opinion when she rejected Dr. Lee-Sigler's opinion.[2] Bailey correctly points out that the ALJ may not make an independent medical determination, *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), and the ALJ may not substitute her own judgment for medical findings, *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). *See also supra Shramek*, 226 F.3d at 814 (citing the standard for the weight to be given to inconsistent medical opinions); *Herron*, 19 F.3d at 333 (listing the different evidence that the ALJ must examine and weigh in making his determination).

---

[2] Bailey relies on *Carter v. Chater*, No. 94 C 6658, 1996 WL 189326 (N.D. Ill. Apr. 15, 1996), in which the court found that the ALJ had acted improperly by not calling her own unbiased medical expert or requesting other evaluations or testimony in determining the onset date of the plaintiff's disability. *Id.* at *4. The case at bar is distinguishable from *Carter*. In *Carter*, the court found that the ALJ admitted a lack of convincing rationale for determining the onset date. *Id.* at *2. Unlike in *Carter*, the ALJ in this case articulated her reasons for rejecting Dr. Lee-Sigler's opinion. (R. 8, Admin. R. at 19, ALJ Decision.) The ALJ listed the findings of Bailey's other doctors that contradict her complaints of constant pain and little relief and that also differ from Dr. Lee-Sigler's opinion. (*Id.* at 15-16.) The ALJ described, in detail, various doctors' reports that indicate improvement, at times "significant," in Bailey's response to treatment and relief of her symptoms. (*Id.* at 15.) The ALJ explained that the remainder of medical evidence from Dr. Lee-Sigler also supported the RFC determination that Bailey was capable of light and sedentary work. (*Id.* at 19.) Therefore, unlike the *Carter* Court, we do not find that the ALJ acted improperly by failing to call her own unbiased medical expert or requesting any other evaluations or testimony.

In this case, however, the ALJ did not "play doctor" and make an independent medical determination, but rather, she described the medical evidence that contradicted Dr. Lee-Sigler's opinion, including the doctor's inconsistencies within her own notes. (R. 8, Admin. R. at 15-16, ALJ Decision.) The ALJ also cited Bailey's description of being able to care for her own child and to do household tasks as inconsistent with the doctor's opinion regarding Bailey's functional restrictions. (*Id.* at 19.) As such, we find that the record in this case provides substantial evidence to support the ALJ's findings, and we conclude that the ALJ properly weighed and discounted Dr. Lee-Sigler's opinion because the ALJ found it to be internally inconsistent with her own progress notes, with the medical evidence and with Bailey's own testimony.

**C. Medical Expert**

Bailey also maintains that the ALJ should have called upon a medical expert to provide an informed basis for her decision when she decided to reject Dr. Lee-Sigler's and Dr. Niemeyer's opinions. Bailey argues that the ALJ should have re-contacted Bailey's treating doctors, specifically Drs. Lee-Sigler and Niemeyer, for clarification. Therefore, she contends that, without the benefit of medical expert testimony or any contrary opinion, the ALJ did not have the informed basis necessary to make her decision *See Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000) (citing 20 C.F.R. § 416.927(a)(3) and stating that the procedure for adjudicating social security disability claims "require[es] the administrative law judge to summon a medical expert *if that is necessary* to provide an informed basis for determining whether the claimant is disabled") (emphasis added).

Bailey has not shown that the ALJ had insufficient evidence to find that Bailey was not under a "disability," as defined in the Social Security Act. In fact, the ALJ described in detail the numerous medical records that were inconsistent with Dr. Lee-Sigler's and Dr. Niemeyer's

opinions of Bailey's functional restrictions. (R. 8, Admin. R. at 15-19, ALJ Decision.) The ALJ also sufficiently set forth her reasons for rejecting Bailey's credibility regarding the extent of her functional limitations. (*Id.* at 14-19.) Therefore, we do not find that it was necessary for the ALJ to summon a medical expert, and we conclude that substantial medical and other evidence supported the ALJ's decision that Bailey was not disabled.

### III. Whether the ALJ Failed to Consider Bailey's Mental Impairment

Second, Bailey claims that the ALJ failed to consider Bailey's mental impairment and erred by not further developing the record on this issue. It is often difficult to develop a full or "complete" record because the plaintiff may always obtain another medical examination, seek the views of one more physician or wait several months to see if a condition has changed. *Luna v. Shalala*, 22 F.3d 687, 692-93 (7th Cir. 1994) (finding that the ALJ properly evaluated the medical records and did not commit reversible error because he asked Luna about his pain, medication and activities, and he reviewed Luna's medical records up to one month before his application was filed). Nonetheless, the Commissioner has a duty to develop the claimant's "'complete medical history' as defined as records of the claimant's medical sources covering at least the 12 months preceding the month in which the claimant's application is filed." *Id.* at 693 (citing 20 C.F.R. § 404.1512(d)). The Commissioner will try to obtain more information if the evidence is insufficient to determine disability or if she is unable to reach a conclusion after weighing the conflicting evidence. *Id.*

In the case at bar, as in *Luna*, the ALJ asked Bailey about her mental problems. (R. 8, Admin. R. at 384-85, SSA Hr'g Tr.) Bailey denied seeing a psychologist or counselor, but stated that she suffered from depression and was on anti-depressants. (*Id.* at 385.) The ALJ also reviewed the medical evidence, covering Bailey's symptoms since 1994, which indicated that

13

Bailey was on a mild dosage of anti-depressants for a sleep disorder. (*Id.* at 15, ALJ Decision.) Moreover, a review of Bailey's medical records demonstrates that there were few notes regarding a diagnosis of depression. Dr. McGrogan noted that Bailey was suffering from symptom magnification and mild to moderate depression secondary to her pain. (*Id.* at 318, Aug. 28, 1997 McGrogan Progress Notes.) He did not, however, prescribe any medication for Bailey. (*Id.*) Dr. McGrogan only recommended self-regulation or biofeedback and deferred to Dr. Baddour to decide a course of action. (*Id.*) Additionally, there is no mention of a diagnosis of depression anywhere else in the record, and Bailey denied having depression during a September 1997 evaluation. (*Id.* at 313, Sept. 24, 1997 Rouhani Notes.) Therefore, the ALJ was not required to further develop the medical record regarding Bailey's mental impairment because she properly evaluated the medical evidence.

## IV. Whether the ALJ Failed to Follow SSR 96-7p

Third, Bailey argues that the ALJ failed to follow the requirements of SSR 96-7p in evaluating her credibility because the ALJ failed to discuss the numerous medications prescribed for Bailey.[3] She also claims that the ALJ failed to recognize her various diagnoses, including fibromyalgia, myofascial pain syndrome and radiculitis. Consequently, Bailey contends that the ALJ's determination of Bailey's RFC and credibility are in error.

---

[3] Bailey cites *Medina v. Shalala*, No. 92 C 8149, 1993 WL 498206 (N.D. Ill. Nov. 30, 1993), and argues that its facts are "remarkably similar" to the instant case, in order to support her claim that the ALJ erred in rejecting the treating physician's opinion as part of the ALJ's credibility determination. (R. 12, Pl.'s Mem. in Supp. of Mot. for Summ. J. at 18.) The case at bar, however, is distinguishable from *Medina*, in which the ALJ improperly rejected a treating physician's opinion in favor of the opinions of two non-examining physicians who "reviewed only an incomplete medical record in making their evaluations." *Medina*, 1993 WL 498206, at *8. Here, the ALJ properly rejected the opinions of Drs. Lee-Sigler and Niemeyer in favor of other medical evidence in the record from physicians who examined and treated Bailey over a sustained period of time.

SSR 96-7p states that in determining an individual's credibility, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statement about symptoms . . . and other relevant evidence in the case record." SSR 96-7p (1996). Furthermore, the individual's statements regarding intensity and persistence of pain and other symptoms and their effect on her ability to work "may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* The ALJ's credibility determination must contain specific reasons for the finding, supported by the evidence in the record, and "must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id. See also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (holding that it is not sufficient for the ALJ to make a single conclusory statement that the claimant's allegations of pain have been considered and/or found not credible). The Seventh Circuit has held that, because the ALJ is in the best position to determine credibility, the ALJ's credibility determination will not be disturbed unless it is patently wrong. *Powers v. Apfel*, 207 F.3d 43, 435 (7th Cir. 2000).

In this case, the ALJ's decision sufficiently set forth specific reasons as to why she questioned Bailey's credibility. Pursuant to SSR 96-7p, a reading of the ALJ's decision displays that she considered the necessary factors, including: (1) Bailey's daily activities; (2) the location, duration, frequency and intensity of pain or other symptoms; (3) the factors that precipitated and aggravated the symptoms; (4) the type, dosage, effectiveness and side effects of medication to alleviate the symptoms; (5) treatments other than medication that Bailey received for relief; (6) any measures other than treatment that Bailey used to relieve symptoms; and (7) any other factors concerning Bailey's functional restrictions. The ALJ properly considered Bailey's daily activities, which were a significant factor in the credibility determination. For example, the ALJ

15

specified the "numerous references to the claimant's involvement in caring for her child, whose birth coincides with the claimant's alleged onset date of disability." (R. 8, Admin. R. at 16, ALJ Decision.) Indeed, the ALJ also indicated that Bailey informed several of her doctors that she performed a good share of the housework, including "running the household and caring for her little girl." (*Id.* at 17.) This differs from her statements at the SSA Hearing, where Bailey testified that she provided little assistance with household chores, and that she previously relied on her parents to care for her daughter. (*Id.* at 385-87, 392, SSA Hr'g Tr.) Moreover, contrary to Bailey's arguments, the ALJ discussed the various diagnoses given to Bailey, including fibromyalgia and myofascial pain syndrome. The ALJ also discussed in detail the various medications and treatments prescribed to Bailey, such as trigger point injections, diuretics, analgesics and antidepressants such as Desyrel prescribed for her sleep disorder and to alleviate her pain. In addition to her written evaluation of Bailey's medical records, the ALJ's discussion regarding Bailey's daily activities, medication and treatments demonstrates that she properly followed SSR 96-7p in setting forth specific reasons for her questioning of Bailey's credibility. In fact, the ALJ even gave credence to Bailey's testimony "insofar as her perception of her physical symptoms is concerned." (*Id.* at 15, ALJ Decision.) Therefore, we conclude that the ALJ did not fail to follow the requirements of SSR 96-7p in assessing Bailey's credibility.

### V. Whether the ALJ Failed to Consider the Vocational Expert's Testimony

Finally, Bailey contends that the ALJ failed to properly consider the testimony of Nancy Wright, the vocational expert, on cross-examination. Specifically, Wright had testified, in response to a hypothetical posed by Bailey's attorney, that a person who had to recline for thirty to sixty minutes as needed during the workday would be precluded from performing the jobs for which Bailey would otherwise have been qualified. (R. 12, Pl.'s Mem. in Supp. of Mot. for

16

Summ. J. at 19.) That hypothetical, however, was based upon Dr. Lee-Sigler's opinion that Bailey's condition required the thirty to sixty minute reclining restriction. As seen above, Dr. Lee-Sigler's opinion was squarely rejected by the ALJ because it was internally inconsistent and inconsistent with other evidence in the record. Thus, because the underlying basis for the hypothetical, *i.e.*, a thirty to sixty minute reclining restriction, was found to be inapplicable to Bailey's case, Wright's answer likewise was irrelevant. Consequently, we find that the ALJ gave the vocational expert's testimony, regarding the reclining restriction hypothetical, appropriate weight. *See Diaz v. Chater*, 55 F.3d 300, 309 (7th Cir. 1995) (holding that the weight to be given to a particular piece of evidence is within the ALJ's discretion.); *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540 (stating that "[a]ll that is required is that the hypothetical question be supported by the medical evidence in the record.") (citation omitted). Therefore, we reject Bailey's final claim.

## CONCLUSION

For the reasons contained in this opinion, we deny Bailey's motion for summary judgment, (R. 10-1), and grant the Commissioner's cross-motion for summary judgment, (R. 15-1). The Clerk of the Court is directed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Defendant and against Plaintiff.

**ENTERED:**

_____
Judge Ruben Castillo
United States District Court

**Dated: July 13, 2001**

17